Murder; twenty years. Appellant entered a guilty plea to an indictment charging that she had intentionally caused the death of her paraplegic husband by "drowning him by force."
After the appellant was indicted by the Dale County Grand Jury in July, 1980, she was sent to Searcy Hospital for examination, where Department of Mental Health officials concluded that she was competent to stand trial.
On May 29, 1981, the appellant and her attorney executed an "explanation of rights and plea of guilty form," which contained the rights outlined in Boykin v. Alabama,395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). At that time the trial judge also instructed the appellant about her rights, and she responded in a manner which indicated her understanding of those rights. The form signed by the appellant and her attorney stated that she understood the rights which had been explained to her, and also that she was not, at that time, under the influence of any "drugs, medicine, or alcoholic beverages."
On June 26, 1981, the appellant filed a motion to withdraw her plea of guilty, the motion was set the following day, and after an evidentiary hearing, it was denied.
 I
The appellant contends that the trial court erred when it denied her request to withdraw the guilty plea. She maintains that at the time she entered the plea she was under the influence of an overdose of medication prescribed by Dr. R.J. McLaughlin. She claims that the over-medication rendered her fully incapable of understanding the consequences of her guilty plea and therefore her plea was involuntary.
At the motion hearing, a letter from Dr. McLaughlin showing that Florinal tablets for headaches had been prescribed for the appellant, was admitted. The dosage was two tablets every four hours as needed, with up to three doses in a twenty-four hour period. Dr. McLaughlin wrote that a side effect of the medication was drowsiness and "it would possibly affect judgment." Further, he wrote "an excess of these tablets would affect judgment a great deal."
During the hearing, appellant testified that she had taken "over the limit" of the medication prescribed by Dr. McLaughlin, adding "I think I took over four or five."
There was no testimony at the motion hearing concerning the appellant's appearance or demeanor at the time she pleaded guilty which would have supported her allegation of incompetency due to an overdose of medication. Neither of her two attorneys suggested, at the time of her plea, any doubt about her mental competency or intimated that she was under the influence of an overdose of medication. The trial judge who accepted the plea was in a far better position to determine whether the appellant *Page 484 
voluntarily, intelligently and understandingly made her plea of guilt. See Williams v. State, 386 So.2d 506 (Ala.Cr.App. 1980). The court's order denying the motion to withdraw the plea stated that the appellant was "competent and fully aware of the charges against her." Further, the court stated that she "was aware of the rights she waived in the event she pleaded guilty and knew the maximum and minimum punishment for the offense charged."
We also note that approximately three weeks elapsed after the guilty plea before the appellant advanced her contention of incompetency. The tardiness of the appellant's claim reflects upon its good faith, sincerity and credibility. Based on the foregoing, it is our judgment that the appellant failed to carry the burden of proving her allegation and the trial court properly denied her motion to withdraw the plea.
 II
Additionally, the appellant maintains that no evidence was presented to establish her involvement or participation in the murder. She argues that the trial court did not have a "factual basis" from which to determine her guilt after she insisted she was innocent of the murder.
From the record of the guilty plea hearing on May 29, 1981, we find the following:
 "Q. [By the Court] And do you understand that you are charged with murder?
"A. [By the Appellant] Yes sir I do.
 "Q. And this fellow that you are charged with killing was your husband, do you understand that?
 "A. Not necessarily, but I plead guilty because — I will plead guilty. I just plead guilty. I didn't kill him but I saw it happen.
. . . .
 "THE COURT: From your investigation, Mr. Fuqua, what facts have you got that would form a basis for her entering into a plea of guilty?
 "MR. FUQUA: [Defense Attorney] Your Honor, from the confession of Mr. McLeod that we obtained through the State's permission. The confession of Mrs. Sanders through the State's permission, we have got a copy of that. Based upon that and from discussions with the Defendant, we have come to the conclusion that her involvement in the case in the killing of the husband; her involvement whether she actually did the pushing in the river or not, but her involvement of not stopping it or helping to plan, or what have you, was enough within the eyes of the law if it was presented to a jury, we are confident if this was brought out that a jury could very easily find her guilty of murder as charged.
. . . .
 "THE COURT: And Mr. Matthews, if you would state for the record what the State would expect to prove so far as this offense is concerned.
 "MR. MATTHEWS: [Assistant District Attorney] The State would expect to prove that the Defendant and Mr. McLeod entered into a conspiracy to kill her husband who was a paraplegic, and that this conspiracy was consummated by McLeod pushing this man who was in a wheel chair into the creek, and he drowned. And that they also, I think, made some attempts to hide the wheel chair and the suitcase. So these things tie the Defendant directly to the commission of the crime.
 "THE COURT: Have you got a copy of the two confessions?
"MR. MATTHEWS: Yes.
 "THE COURT: If you would introduce those into evidence and let me see those."
In North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160,27 L.Ed.2d 162 (1970), the United States Supreme Court held that a guilty plea, entered over the accused's protestation of innocence, was valid as long as the accused was represented by competent counsel and the evidence strongly supported his guilt.
In Lett v. State, 333 So.2d 859 (Ala.Cr.App. 1976), and inYoung v. State, 408 So.2d 199 (Ala.Cr.App. 1981), this court relied on the principles laid down in North Carolina *Page 485 v. Alford, supra, and recognized that pleas of guilty coupled with assertions of innocence could not be accepted unless there was a factual basis to support the plea.
In the present case, the trial court had before it two very detailed confessions, by the appellant and by Johnny V. McLeod, each outlining the appellant's participation in the killing of her husband. Appellant admitted to the trial court that she had read her statement, and her attorney acknowledged that her involvement would probably result in a conviction if presented to a jury.
This case can be distinguished from the recent case of Yamadav. State, [Ms. 7 Div. 894, March 2, 1982] (Ala.Cr.App. 1982), in which the prosecution presented only an offer of proof as a factual basis for the plea. Here, actual evidence in the form of two confessions strongly supported appellant's guilt and was sufficient to satisfy the requirement of North Carolina v.Alford, supra.
It is our judgment that the trial judge had a sufficient factual basis to determine that the appellant was guilty of the murder notwithstanding her assertion of innocence at the time of her guilty plea.
We have examined the record in this case and find no error. The judgment of conviction by the Dale Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.